FILED - KZ
November 3, 2023 3:16 PM
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
mg   Scanned by /s/ 11/3/23

UNITED STATES OF AMERICA
DISTRICT COURT OF THE UNITED STATES
WESTERN DISTRICT OF MICHIGAN

Leonard Junior Cousino, a Natural Person,

        Plaintiff,

vs.

COUNTY OF CALHOUN, a public body corporate; STEVEN HINCKLEY*, an individual; JOHN PIGNATARO*, an individual; KATHERINE K. M. AMBROSE (P63149)*, an individual, as individuals and state actors operating under color of law;

        Defendants

Case No.

1:23-cv-1174
Janet T. Neff
U.S. District Judge

Notice of Original Civil
Complaint by Affidavit

NOTICE: Asterisk (*) after individual name denotes State Actor Operating Under Color Of Law And *de facto* Authority

---

Leonard Junior Cousino, a Natural Person and Plaintiff *In Propria Persona*
13450 West Michigan Avenue
Marshall, MI 49068
(269) 967-7010

---

JAMES L. DYER (P32544)
Corporate Attorney for corporate defendant COUNTY OF CALHOUN
315 West Green Street Marshall, MI 49068
(269) 781-0917
E-mail address: jdyer@calhouncountymi.gov

STEVEN HINCKLEY*, state actor defendant
c/o CALHOUN COUNTY SHERIFF'S DEPARTMENT
161 East Michigan Avenue
Battle Creek, Michigan 49014
269-969-6450
Attorney as yet unknown

JOHN PIGNATARO*, state actor defendant
c/o CALHOUN COUNTY SHERIFF'S DEPARTMENT
161 East Michigan Avenue
Battle Creek, Michigan 49014
269-969-6450
Attorney as yet unknown

KATHERINE K. M. AMBROSE (P63149)*, state actor defendant
c/o 10TH DISTRICT COURT
161 East Michigan Avenue
Battle Creek, Michigan 49014
Attorney as yet unknown

Notice of Original Civil Complaint by Affidavit

Affidavit

I, Affiant/Plaintiff and Natural Person Leonard Junior Cousino, do declare and aver that the following statements are true and correct:

Complaint

Jurisdictional Statement

This matter is brought by Proper Party Affiant/Plaintiff and Natural Person Leonard Junior Cousino (hereafter, "Plaintiff"), by self-representation, who declares his unalienable and Constitutional right to bring this action into a jurisdictionally-lawful *de jure* court operating under the supremacy of the Constitution of the United States (Art. VI, Sec. 2 and 3, Const. U.S.A.; Art. III, Sec. 1 and 2, Const. U.S.A.), inclusive of the precedent Ordinance for the Government of the Territory of the United States, Northwest of the River Ohio, and in the manner of the 10th, 9th, 8th, 7th, 6th, 5th, 4th, and 1st Articles of Amendment to the Constitution of the United States of America.

Plaintiff invokes, and relies upon, the Constitutional authority and the *de jure* judicial powers of a common law federal court (Art. III, Sec. 2, Const. U.S.A.; Marbury vs. Madison, 5 U.S. 137 (1803); Cohens vs. Virginia, 19 US 264 (1821), among others), and, "of necessity", additionally provides notice of the *de facto* 14th, 13th, and 11th Articles of Amendment, and *de facto* "statutory" authority pursuant to 42 USC 1988; 42 USC 1986; 42 USC 1985; 42 USC 1983; 42 USC 1982; 42 USC 1981; 28 USC 1651; 28 USC 1443; 28 USC 1367; 28 USC 1343; 28 USC 1333; and 28 USC 1331; *inter alia*.

---

Parties

Plaintiff relies on Federal Rules of Civil Procedure Rule 9(a), "Capacity", for the description of parties:

Proper Party Plaintiff Leonard Junior Cousino is self-representing in this action, and is and was at all times relevant to the issues of this action (and when not deprived of his liberty as explained below), an inhabitant of the dwelling on his private property located at 13450 West Michigan Avenue, Marshall, in Calhoun County, Michigan.

Defendant "COUNTY OF CALHOUN", is and was at all times relevant to the issues of this action the respondeat superior and an entity of legal fiction and public body corporate subsidiary to the *de facto* corporate "STATE OF MICHIGAN" doing commercial business within Calhoun County, Michigan and Operating Under Color Of Law And Authority; and is being sued, "of necessity", in its fictional "corporate" capacity.

Proper Party Defendant STEVEN HINCKLEY* is and was at all times relevant to the issues of this action the *de facto* "county sheriff" employed by the colorable corporate "COUNTY OF CALHOUN" in Calhoun County, Michigan, and is a State Actor Operating Under Color Of Law And *de facto* Authority; and is being sued in his individual capacity.

Proper Party Defendant JOHN PIGNATARO* is and was at all times relevant to the issues of this action a *de facto* sheriff deputy employed by the colorable corporate defendant "COUNTY OF

CALHOUN" in Calhoun County, Michigan, and is a State Actor Operating Under Color Of Law And *de facto* Authority; and is being sued in his individual capacity.

Proper Party Defendant KATHERINE K. M. AMBROSE (P63149)* is and was at all times relevant to the issues of this action *de facto* district court magistrate employed by the colorable corporate "COUNTY OF CALHOUN" in Calhoun County, Michigan, and is a State Actor Operating Under Color Of Law And *de facto* Authority; and is being sued in her individual capacity.

The non-fictional defendants were at all times relevant to the issues of this action corporate agents employed by the *de facto* public body corporate respondeat superior defendant "COUNTY OF CALHOUN", within the republic of Michigan and Calhoun County, Michigan, and were/are State Actors Operating Under Color Of Law And *de facto* Authority; and are being sued in his or her individual capacity.

Statements of Fact

1. That Affiant/Plaintiff and Natural Person Leonard Junior Cousino is a 72-year old native-born American, an United States Army Vietnam veteran, and an inhabitant of the republic of Michigan who has lived at his privately-owned property located at 13450 West Michigan Avenue in Calhoun County, Michigan since 1983.

2. That Plaintiff herein expressly declares, claims, and reserves all the natural, fundamental, and common law rights and entitlements attendant to his status as indicated in paragraph 1, above (and further explained below), and which are purportedly protected by both the Constitutions of the United States of America and Michigan.

3. That the instant action is a further continuation of the claims of a pattern and practice of injurious harassment and retaliation that has been previously presented to this court in successive civil actions 1:15-cv-00907 (W.D. Mich.) and 1:21-cv-00679 (W.D. Mich.), and Plaintiff incorporates by reference the facts and claims that were presented in those civil actions into the facts and claims of the instant case, including, but not limited to, the undisputed affidavits of Plaintiff and Plaintiff's tenant at that time, Lori Ann Sayre that were filed in 1:21-cv-00679 (W.D. Mich.). Reference - 1:15-cv-00907 (W.D. Mich.); 1:21-cv-00679 (W.D. Mich.); copy of Affidavit of Leonard Junior Cousino (attached); copy of Affidavit of Lori Ann Sayre (attached)

4. That on 11/4/2021, Plaintiff returned from the Firekeeper's Casino to his house for the evening at about 10:30 p.m. and went to bed.

5. That later that evening (sometime after midnight), and without any form of due process, or presentment of warrant, and without Plaintiff's consent to search, Plaintiff was abruptly wakened by a sheriff's deputy who forcibly broke open the front door (which had caused structural damage to the main door frame assembly) and entered into Plaintiff's house with another deputy who yelled "Sheriff Department" right outside of Petitioner's bedroom door without letting Affiant dress; and both deputies had their weapons drawn pointing in Plaintiff's direction when they broke in.

6. That one of the deputies, without cause as Plaintiff had offered to first unlock the door to Plaintiff's computer room/office across from his bedroom so it would not get damaged, then proceeded to maliciously go ahead and forcibly break open that door which caused unnecessary additional damage to that doorframe.

7. That, without any explanation given to him, Plaintiff was then immediately handcuffed with his hands behind his back while still only in his underwear and with the cuffs closed so tight on his wrists that it caused pain and cut into Plaintiff's skin.

8. That, without probable cause, or presentment of judicially-authorized warrant, or Plaintiff's consent, Plaintiff was then immediately placed by deputies into the backseat of a cold deputy car

with only his bathrobe tossed over him for warmth (Plaintiff was not allowed to actually put it on before being cuffed), and all that time Plaintiff continued to tell the deputies, to their ongoing indifference, that the handcuffs were hurting him and that he was cold.

9. That, after sitting in the back of the police car for about 2 hours and after much complaining, a sheriff's sergeant finally ordered a deputy to loosen the handcuffs and leave Plaintiff's hands cuffed in front of his body for about 2 more hours but still without adequate warmth.

10. That after about 3 hours, a deputy came and asked Plaintiff if he had any information about a "2017 Chevy Colorado truck", of which Plaintiff had no knowledge; Plaintiff, however, did legitimately own a 2007 Chevy Colorado pickup at that time and offered to show the valid title to that vehicle to the deputies.

11. That after about 4 hours in the back of the sheriff's car Plaintiff was finally released and at that time presented (after the fact) with a bogus "search warrant" which had no attached affidavit and an illegible "inventory list" and both were clearly Constitutionally-defective on their face (see attachment); and, having been under duress at that time, Plaintiff involuntarily provided a coerced signature for said documents in order to not get arrested and jailed for threatened "noncompliance". Reference - colorable "search warrant" and "inventory list" of 11/5/2021 (attached); Am. IV, Const. U.S.A.; Art. 1, Sec. 11, Mich. Const. (1963); Schneckloth vs. Bustamonte, 412 US 218 (1973); Kaufman vs. United States, 394 US 217 (1969); Aguilar vs. State of Texas, 378 US 108 (1964); and others

"The Fourth Amendment protects the security of one's privacy against arbitrary intrusion by the police." Schneckloth vs. Bustamonte, 412 US 218 (1973)

"The Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force. For no matter how subtly the coercion is applied, the 'consent' resulting from such coercion is no more than a pretext for the unjustified policy intrusion against which the Fourth Amendment is directed." Schneckloth vs. Bustamonte, 412 US 218 (1973)

"Every householder, the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house." Kaufman vs. United States, 394 US 217 (1969)

"Under Fourth Amendment, warrant may not properly issue for search of private dwelling unless probable cause therefore can be found from facts or circumstances presented under oath or affirmation, and mere affirmance of belief or suspicion is not enough." Am. IV, Const. U.S.A. Aguilar vs. State of Texas, 378 US 108 (1964)

12. That Defendants JOHN PIGNATARO* and KATHERINE K. M. AMBROSE* deliberately and maliciously combined under color of law to fraudulently generate said sham "SEARCH WARRANT" (which was without accompanying affidavit or description of facts giving rise to probable cause) and unreadable "Evidence Tabulation Sheet" that fails to comport with Fourth Amendment requirements notwithstanding having not been generated until after Plaintiff had been handcuffed and detained by sheriff's deputies for four hours and after the search of Plaintiff's house had already commenced. Reference - colorable "SEARCH WARRANT" and "Evidence Tabulation Sheet" dated November 5, 2021 (attached)

13. That after returning inside his house after the unreasonable warrantless search, Plaintiff found that the deputies also wanted his phone and password, which they confiscated promising its return, and also took 2 surveillance camera recorders and needlessly questioned the validity of a legal Indiana license plate that was still on a 2011 Corvette Grand Sport that Plaintiff had just legitimately bought down in Indiana of which Plaintiff had not yet transferred the title.

14. That the deputies then left without ever giving Plaintiff's phone back (which is the phone with which he had been conducting his auto parts business), and, despite multiple calls by Plaintiff to the detective who took the phone to return his business phone, Plaintiff eventually had to unnecessarily spend $1,000.00 to buy a new "Iphone" in order to be able to still conduct his auto parts business since he is unable to conduct his business without a working and accessible phone; and that such unlawful and malicious confiscation obstructed Plaintiff's ability to conduct commerce. Reference - 18 USC 1951, below

"(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.
(b) As used in this section—
(1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.
(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.
(3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.
(c) This section shall not be construed to repeal, modify or affect section 17 of Title 15, sections 52, 101–115, 151–166 of Title 29 or sections 151–188 of Title 45. 18 U.S. Code § 1951

15. That, at some point during the time Plaintiff spent in the back seat of the unheated sheriff's vehicle, the deputies arrested that night Robert Mack, who had been living at that time on property that is adjacent to Plaintiff's property to the West, for the alleged theft of the 2017 Chevy Colorado pickup truck.

16. That, as another additional example of excessive overreach, the sheriff's department ended up deploying during that night over 40 deputies (only from the Calhoun County Sheriff's Department, and no other agency), as well as the county SWAT team with their armored vehicle, upon Plaintiff's private property that early morning; and Plaintiff asserts that this egregious use of excessive force and waste of taxpayer resources was undoubtedly done in order to maliciously intimidate and retaliate for his litigation that was pending at that time in the Western District.

17. That Robert Mack was then released after his arrest on 11/7/2021 at about 8:30 p.m., whereupon he returned to his trailer and soon afterward went and advised Plaintiff that the same county detective who took Plaintiff's phone had told Mr. Mack that the sheriff's deputies were "going after Cousino" because Plaintiff was suspected of "running a chop-shop" and that he (Mr. Mack) was being released on the condition that he would act as an informant to the sheriff's deputies to "get" Plaintiff. Reference - Affidavit of Robert Mack (attached)

18. That Plaintiff vigorously denies that he is, or has ever been, "running a chop-shop", but he does legitimately and legally sell auto parts and builds car, truck, and high performance racing engines. Reference - copy of Business License of Leonard Junior Cousino (attached)

19. That Plaintiff asserts that a similar tactic was previously used on him for the purpose of demonizing him by insinuation before the federal court when he filed his previous lawsuit against the corporate defendant (1:15-cv-00907 (W.D. Mich.)) in 2015 in which, while he was away on Christmas holiday vacation, Plaintiff's house was mysteriously broken into and burgled, in an obviously

targeted manner, of an entire safe, the computer in which had his document files from his pending federal lawsuit, and a surveillance camera recorder, among other items; and then when the sheriff's deputies were called about the theft they did not perform any meaningful investigation into the crime, but ended up also confiscating Plaintiff's guns and numerous gold and silver coins which never have been returned to Plaintiff, and $5,000.000 in cash of which was only returned $2,500.00. Reference - 1:15-cv-00907 (W.D. Mich.)

20. That Plaintiff had since learned from the county deputies that the law enforcement "investigation" and evidence about the pickup truck theft case had been turned over to the tribal authorities at Firekeeper's Casino, who have, since the November 5, 2021 unlawful search and seizure incident, still been in wrongful possession of Plaintiff's business phone with no positive indication of its potential future return to Plaintiff, notwithstanding that after his arrest, Robert Mack was still able to be in possession of his own phone which had not been confiscated as part of the purported tribal "investigation" against him; and Plaintiff asserts that the confiscatory tactics used by the various law enforcement agencies that were involved in the supposed "investigation" (functioning similar to the tactical devices of the "general warrant") was nothing more than another "fishing expedition" made under color of law which is "pattern and practice" within the bailiwick of defendant STEVEN HINCKLEY*. Reference - United States vs. Rabinowitz, 339 U.S. 56 (1950)

"Whatever the casuistry of border cases, it is broadly a totally different thing to search a man's pockets and use against him what they contain, from ransacking his house for everything which may incriminate him, once you have gained lawful entry, either by means of a search warrant or by his consent. The second is a practice which English-speaking peoples have thought intolerable for over a century and a half. It was against general warrants of search, whose origin was, or was thought to be, derived from Star Chamber, and which had been a powerful weapon for suppressing political agitation, that the decisions were directed, of which *Entick v. Carrington,* 19 How.St.Trials, 1029, is most often cited. These cases were decided just after the colonists had been hotly aroused by the attempt to enforce customs duties by writs of assistance, and when, within 30 years, they framed the Fourth Amendment, it was general warrants that they especially had in mind." United States vs. Rabinowitz, 339 U.S. 56 (1950)

21. That Plaintiff asserts that the actions of the Calhoun County sheriff's deputies on the night of November 4/5, 2021, as was described in Plaintiff's attached affidavit, constituted a *de facto* act of war against the Plaintiff and his natural rights to liberty, security and privacy of person, and property in order to deliberately intimidate and retaliate against Plaintiff, chill his First Amendment rights, as well as curtailing Plaintiff's ability to conduct his lawful business, and such unconstitutional actions were maliciously executed in combination with those herein named state actor employee agent defendants of the corporate defendant in the instant action, as was validated by the county deputies' declaration to Robert Mack that they were "out to get" Plaintiff.

22. That, in light of the facts averred above, Plaintiff asserts that the incident of November 4/5, 2021 was clearly unconstitutional, and was both an unreasonable search and an unreasonable seizure, and such state actions were made in violation of the Fourth Amendment of the federal constitution and Article I, Section 11 of the Michigan state constitution of 1963. Reference - Am. IV, Const. U.S.A.; Art. I, Sec. 11, Mich. Const. (1963)

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Am. IV, Const. U.S.A.

"Sec. 11 Searches and seizures.
Sec. 11. The person, houses, papers, possessions, electronic data, and electronic communications of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things or to access electronic data or electronic communications shall issue without describing them, nor without probable cause, supported by

oath or affirmation. The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state. "

23. That, because of the continued targeting of Plaintiff (as shown herein) by the various state actors in the "TOWNSHIP OF MARSHALL" and "COUNTY OF CALHOUN" against Plaintiff's efforts to exercise his constitutional rights to life, liberty, and property and his legitimate and legal "pursuit of happiness", Plaintiff realistically asserts that he is still in real danger of injury to his life and limb from the actions of defendants or their proxies, and Plaintiff asserts that the interference of the federal court to impose meaningful exemplary relief would curtail the need to satisfy those state actor employees of the corporate defendant's, and/or the county sheriff's department, and/or tribal law enforcement's, need to abusively control and exercise power over the life. liberty, and property of Plaintiff.

Brief in Support

Plaintiff asserts that, on the night of November 4/5, 2021, defendant state actors, while operating under color of law, committed an egregiously unreasonable seizure of Plaintiff and searched Plaintiff's house without Plaintiff's consent and detained Plaintiff without any probable cause or in-hand warrant in violation of the Fourth Amendment, which had not been generated until several hours after the search and detainment was already being conducted:

"The essential purpose of this [4th] amendment is to shield the citizen from unwarranted intrusions into his privacy." Jones vs. United States, 357 US 493 (1958)

"The right to security in person and property protected by the Fourth Amendment may be invaded in quite different ways by searches and seizures; a search compromises the individual interest in privacy, while a seizure deprives the individual of dominion over his or her person or property." Horton vs. California, 496 US 128 (1990)

There was no "knock and announce" at the beginning of the incident, but rather deputies forcibly broke into Plaintiff's house with guns drawn:

"The knock-and-announce statute requirement that officers identify themselves and state their authority and purpose before entering a private residence has its roots in the Fourth Amendment." People vs. Polidori, 190 Mich.App. 693, 476 NW2d 482 (1991)

The colorable "Search Warrant, that was produced 4 hours after Plaintiff had been detained in an unheated sheriff deputy's vehicle, was invalid as to its many structural defects (no affidavit, no jurat signed under penalty of perjury, no accounting of facts that would create probable cause for a warrant to issue, etc.), and was worded in the manner of a "General Warrant" ("any and all..."):

"It is settled law in this jurisdiction and generally elsewhere that an affidavit for a search warrant made only on information and belief is insufficient to move the judicial discretion of the issuing officer." People vs. Moten, 233 Mich. 169, 206 NW 506 (1925)

"A purported affidavit, on which perjury could not be assigned if it was willfully false, would not, in law, be an affidavit at all." Clarke vs. Wayne Circuit Judge, 193 Mich. 33, 159 NW 387 (1916)

"A complaint for the issuance of a search warrant is insufficient if made on information and belief." People vs. Effelberg, 220 Mich. 528, 190 NW 727 (1922)

"An affidavit for a search warrant which set forth mere conclusions of affiant, and failed to state facts and circumstances within his knowledge from which the magistrate could find probable cause was insufficient, and the search warrant issued there under was void." People vs. Effelberg, 220 Mich. 528, 190 NW 727 (1922)

"It must also contain, as distinguished from mere conclusions or belief, known material facts directly stated as affiant's grounds for such belief. In absence of the statement of facts above quoted, the affidavit under consideration would be destitute of materials facts and circumstances necessary to justify a finding of probable cause, and invalid for the purpose intended." People vs. Moten, 233 Mich. 169, 206 NW 506 (1925), quoting People vs. Effelberg, 220 Mich. 528, 190 NW 727 (1922); United States vs. Michalski, 265 F. 839 (1919)

The placing of Plaintiff in the unheated deputy's vehicle for 4 hours while tightly handcuffed after sheriff's deputies forcibly broke into Plaintiff's house was deliberately malicious and retaliatory and was a form of low-grade torture; and Plaintiff vigorously asserts that such treatment is an intentional violation of the requirements of the Fourth and Fourteenth Amendments (see paragraphs 11, 19, and 21 in the "Statements of Fact", above), and such unlawful detention also constituted a form of false imprisonment in violation of the Fourth Amendment:

"The tort of false imprisonment provided the proper analogy to an individual's 42 USC 1983 suit, against a city and some of its police officers, seeking damages for false arrest in violation of the Federal Constitution's Fourth Amendment, as the sort of unlawful detention remediable by the tort of false imprisonment was detention without legal process." Wallace vs. Kato, 549 US 384 (2007)

The malevolent deployment of over 40 deputies along with the SWAT team in their armored personnel carrier onto Plaintiff's property during the incident was an egregious overreach meant to antagonize and retaliate against Plaintiff for his previous litigative actions against various Calhoun County state actors and to attempt to chill any further efforts by Plaintiff to seek redress through the federal courts which are violations of fundamental individual rights to which Plaintiff is seeking his statutory remedy:

"The officers of the law in the execution of process, are obliged to know the requirements of the law and if they mistake them, whether through ignorance or design, and anyone is harmed by their error, they must respond in damages." United States vs. Conklin, 68 US 644 (1 Wall.) (1864)

"Where a court is without jurisdiction over the subject-matter, but assumes it, or where the rules which an inferior court are bound to adopt are deviated from so far that the proceedings are coram non judice, and the liberty of the citizen has been restrained by its process or judgment, trespass for false imprisonment is the proper remedy." Dynes vs. Hoover, 61 US 65 (1857)

"Section 1343(3) of Title 28, USC, which creates Federal District Court jurisdiction of any civil action to redress the deprivation, under color of law, of any right, privilege, or immunity secured by the United States Constitution or by any Federal statute providing for equal rights of citizens or all persons within the jurisdiction of the United States, applies whether personal rights or only property rights are allegedly impaired." Lynch vs. Household Finance Corporation, 405 US 538 (1972)

Since Plaintiff had not committed any crime, Plaintiff never was actually arrested on any charge notwithstanding the illegal detention and the theft of his personal property by unknown sheriff deputies during the illegal search, and therefore such search and arrest incident was unreasonable by its very nature:

"A person is 'seized' within meaning of Fourth Amendment only when by means of physical force or show of authority his freedom of movement is restrained; person is 'seized' only if, in view of all the circumstances surrounding the incident, reasonable person would have believed that he was not free to disregard questions and walk away, there has been no intrusion upon person's liberty or privacy as would under the Constitution require some particularized and objective justification." United States vs. Mendenhall, 446 US 544 (1980)

"Questions of reasonableness of searches depends upon facts and circumstances and total atmosphere of case, but facts and circumstances must be viewed in light of established Fourth Amendment principles." Am. IV, Const. U.S.A. Chimel vs. California, 395 US 752 (1969)

Plaintiff asserts that the herein-grieved incident is typical of the "search now, warrant later" tactics routinely used by the state actor agents of the CALHOUN COUNTY SHERIFF'S DEPARTMENT; and such methods are "pattern and practice" in Calhoun County and said routine Fourth Amendment violations in the county (of which Plaintiff can provide witness testimony at trial) are never scrutinized and raised as defensible issues by a county court-appointed attorney, and such illegal searches and seizures are always overlooked by the judges and magistrates within the insular county court system.

Plaintiff contends that such injurious abusive actions of law enforcement power are reminiscent of the abusive tactics employed by the British military ("Redcoats"), and procedurally mimic the abusive procedural "authority" of general warrants (see paragraph 19 in the "Statements of Fact", above).

The federal constitution's Fourth Amendment's proscriptions against unreasonable search and seizure apply to the states through the Fourteenth Amendment:

"This amendment's prohibition against unreasonable searches and seizures is enforceable against the states through Amend. 14" Camara vs. Municipal Court of City and County of San Fransisco, California, 387 US 523 (1967)

"The security of one's privacy against arbitrary intrusion by the police, which is at the core of this amendment, is basic to a free society, and it is therefore implicit in concept of ordered liberty and as such enforceable against the states through the due process, and, were a state affirmatively to sanction such incursion into privacy, it would run counter to guaranty of Amend. 14." Stefanelli vs. Minard, 342 US 117 (1951)

"Where the individual has a constitutional right, and the state has a correlative constitutional duty which it deliberately fails to perform, there is state action within Fourteenth Amendment." Am. XIV, Const. U.S.A. Watson vs. Branch County Bank, 380 F.Supp. 945 (W.D. Mich. 1974), reversed 516 F.2d 902

"State's police power is not a license to ignore constitutionally protected rights of equal protection of the law, of equal enforcement of law, and of due process of law." Am. XIV, Const. U.S.A. Lewis vs. City of Grand Rapids, Michigan, 222 F.Supp. 349, reversed in part 356 F.2d 276, certiorari denied 385 US 838 (1963)

Since Plaintiff was never arrested, or charged with any crime, as a result of the November 4/5, 2021 incident, and, as such, Plaintiff's unwarranted detention was a period of false imprisonment.

As another clear example of the routine and deliberate "pattern and practice" by law enforcement actors within Calhoun County, state actor defendants intentionally combined to generate a fraudulent "SEARCH WARRANT" (which had no accompanying affidavit), together with an illegible "INVENTORY LIST", in a contrived effort to intentionally deceive Plaintiff by producing "official-looking" documents that do not substantially comply with Fourth Amendment requirements; and, said documents were constructed in a manner without specificity of items to be searched ("any and all...") that would procedurally mimic the function of a "general search warrant" (see paragraph 19 in the Statements of Fact, above).

During the illegal search, Defendants confiscated numerous items of Plaintiff's property (Iphone, guns, and coins/cash) which have never been returned in spite of many unsuccessful efforts by Plaintiff to contact Defendant JOHN PIGNATARO* by phone and who still refuses to respond and return Plaintiff's numerous voice messages.

Plaintiff asserts that the breaking into Plaintiff's house, the search of his house, and his forcible confinement in an unheated sheriff's vehicle began before any warrant was generated:

"Fourth Amendment generally prohibits warrantless entry of person's home, whether to make arrest or to search for specific objects." Illinois vs. Rodriguez, 497 US 177 (1990)

Plaintiff asserts that, as an American, he is entitled to the protections of both the State and Federal Constitutions:

"Constitutional guaranties apply to all alike and should not be withheld in slightest degree even from those under suspicion of violating law." Ex parte Bommarito, 270 Mich. 455, 259 NW 310 (1935)

"One cannot justify a violation or intrusion of a constitutional right by what such invasion reveals." People vs. Allen, 15 Mich.App. 387, 166 NW2d 664 (1968)

Inasmuch as none of the named state actor defendants had lawful authority to commit their colorable state actions, they were acting in their individual capacity and are not entitled to immunity:

"An officer, executing the process of a court which has acted without jurisdiction over the subject matter, becomes a trespasser." Dynes vs. Hoover, 61 US 65 (1857)

## Request for Relief

In consideration of the statement of facts and references of law set forth above, Affiant/Plaintiff and Natural Person Leonard Junior Cousino does request the following compensatory, exemplary/punitive, and injunctive relief:

1. That this court enjoin the Calhoun County Sheriff, and his deputies, from continuing to attempt to defame, slander, and criminalize Plaintiff under fraudulent pretexts of Plaintiff allegedly running a "chop-shop" in order to punish Plaintiff for having brought litigation against county and township state actors;

2. That the Calhoun County Sheriff deputies cease and desist from any further efforts to attack Plaintiff's fundamental rights and forcibly impose superordinate control over Plaintiff and his privately-owned property ("personalty") under color of law;

3. That this court order that all of Plaintiff's property illegally confiscated under color of law be immediately returned, including, but not limited to, his business phone, the confiscated guns, and the confiscated coins and cash;

4. That the bonds of the state actor defendants be revoked;

5. That, in addition to the request made in paragraph 3, above, the Federal Department of Justice, the Federal Bureau of Investigation, the Michigan Attorney General's Office, or any other appropriate investigative and enforcement agency(ies), be given notice of the contrived actions of the Calhoun County Sheriff's Department against Plaintiff that are in violation of federal criminal statute(s) and proceed with their Constitutional and statutory obligations to not obstruct commerce and remove and eliminate from public office those malversational state actors that are the cause of government corruption;

6. That this court grant to Plaintiff compensatory and exemplary/punitive damages of $300,000.00 (Three Hundred Thousand Dollars)

7. That the federal district court provide any other relief as is deemed appropriate to contravene the herein-described treasonous violations of constitutional rights and miscarriages of justice that typify the routine patterns and practices of the herein-named state actor corporate agents operating within the corporate defendant COUNTY OF CALHOUN.

I, Plaintiff and Natural Person Leonard Junior Cousino, further say nothing.

11-3-2023

All Rights Reserved,

*Leonard Junior Cousino* (signature)
Leonard Junior Cousino
13450 West Michigan Avenue
Marshall, Michigan

Self-Verification

I, Affiant/Plaintiff and Natural Person Leonard Junior Cousino, do attest and affirm that the averments and statements in the above "Notice of Original Civil Complaint by Affidavit" are true and correct, under penalty of perjury.

11-3-2023

All Rights Reserved,

*Leonard Junior Cousino* (signature)
Leonard Junior Cousino
13450 West Michigan Avenue
Marshall, Michigan